**AIRCRAFT OWNERS AND PILOTS ASSOCIATION, Petitioner**

v.

**FEDERAL AVIATION ADMINISTRATION and Robert A. Sturgell, Acting Administrator, Federal Aviation Administration, Respondents.**

No. 07–1407.

United States Court of Appeals, District of Columbia Circuit.

Oct. 7, 2008.

Kathleen Ann Barbara Yodice, Yodice Associates, Washington, DC, for Petitioner.

Bradley James Preamble, Sheila Ann Skojec, Federal Aviation Administration, Litigation Division, Washington, DC, for Respondent.

Before: BROWN, Circuit Judge, and EDWARDS and SILBERMAN, Senior Circuit Judges.

### *JUDGMENT*

PER CURIAM.

This appeal was considered on the record from the Federal Aviation Administration and on the briefs and arguments of the parties. It is

**ORDERED AND ADJUDGED** that the petition for review be denied for the reasons stated in the memorandum accompanying this judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C. Cir. Rule 41.

## MEMORANDUM

Petitioner Aircraft Owners and Pilots Association ("AOPA") seeks remand of a Federal Aviation Administration ("FAA") final rule entitled "Modification of Phoenix Class B Airspace Area; Arizona" ("Final Rule"), 72 Fed.Reg. 44372 (August 8, 2007) (to be codified at 14 C.F.R. pt. 71), on the grounds that the rule is arbitrary, capricious, and unsupported by substantial evidence in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and furthermore that the rulemaking is inconsistent with the notice and comment formalities required under the auspices of the same, 5 U.S.C § 553(b), (c). We disagree, and we therefore deny AOPA's request for a remand of the rule to the agency for further proceedings.

■ The record discloses ample evidence to support FAA's decision to modify the Phoenix Class B airspace in the interest of ameliorating the agency's safety and efficiency concerns. In the Notice of Proposed Rulemaking ("NPRM"), FAA specifically cites the improvement of air traffic flow and the reduction of mid-air collision risk as its primary objectives in promulgating the airspace modifications. 72 Fed. Reg. 6501, 6502 (Feb. 12, 2007) (to be codified at 14 C.F.R. pt. 71). The Final Rule echoes this general rationale, 72 Fed. Reg. at 44372, and moreover references the proliferation of Traffic Alert and Colli-sion Avoidance System ("TCAS") Resolution Advisories ("RAs") in the portion of Phoenix airspace whose modification is contested by the AOPA. *Id.* at 44373.

FAA has determined in its discretion that the frequency of TCAS RAs in the vicinity of Area C of Phoenix airspace poses a significant safety risk by distracting pilots of inbound commercial traffic and diminishes airport efficiency by snarling traffic with aborted landings and "go arounds." We believe that the record before us contains sufficient evidence to support the Administrator's conclusions. It is unquestionably true that FAA could have rectified the confliction situation either by increasing the glide slope of inbound commercial aircraft, as AOPA prefers, or by lowering the Class B floor in Area C, as the agency ultimately decided. That FAA arrived at the latter of these two alternatives does not render its decision unreasonable.

FAA correctly notes that petitioner has articulated no standard by which to evaluate its claim that the Phoenix Class B airspace is "too complex." FAA Br. at 33. Furthermore, FAA directly addressed comments regarding the complexity of the airspace in both its NPRM and Final Rule. 72 Fed.Reg. at 6503; *id.* at 44372, 44373–74. In reaching its final decision, FAA weighed numerous factors including the safety and efficiency concerns discussed *supra*, as well as matters as diverse as the geography and meteorology of the Phoenix area. *Id.* at 44374. Indeed, FAA did not neglect to take the interests of general aviation pilots into account in fashioning the admittedly complex airspace: the agency found that less complex alternatives would be "overly restrictive" of general aviation by "creat[ing] more airspace than is needed for Class B operations" over Phoenix. *Id.* We do not find this judgment to be unreasonable.

Finally, petitioner has failed to establish a violation of the notice and comment provisions of the APA. It is self-evident that a visual flight rules ("VFR") flyway—defined as an *optional* flight path recommended for *avoiding* Class B airspace-cannot at the same time be said to form part of such airspace. *See* FAA Order 7210.3V ¶¶ 11-5-1, 11-7-1(b), 11-7-2 (2008). The decision to move the unregulated flyway did not require notice and comment because the flyway is a mere recommendation to pilots and does not carry with it any binding effect.

Moreover, while petitioner attempts to demonstrate that VFR flyways are "frequently an important aspect of Class B rulemakings," Pet. Br. at 16, the precedents it cites plainly stand for the contrary proposition. Petitioner faults FAA for having neglected to mention VFR flyways in its *précis* of the proposed modifications, Pet. Br. at 47, yet this is also true of the NPRMs from the San Diego, Charlotte, and Houston Class B rulemakings on which AOPA relies. "Proposed Modification of the San Diego Class B Airspace Area," 63 Fed.Reg. 27519, 27520; "Proposed Alteration of the Charlotte, NC, Class B Airspace Area," 59 FR 10040, 10041-43; "Proposed Modification of the Houston Class B Airspace Area; TX," 68 Fed.Reg. 18910, 18912-13. While FAA may arguably have been more laconic here in its descriptions of the proposed flyway relocation than has been its wont in other rulemakings, the fact remains that mere mention of a flyway as an ancillary policy consideration in the context of a Class B rulemaking does not automatically subject agency decisions concerning the flyways to notice and comment obligations.

The petition for review is denied.

Separate statement of SILBERMAN, *Senior Circuit Judge.* I am rather perplexed as to why FAA does not use informal adjudi-

cation for such a decision rather than APA rulemaking.